**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

DOUGLAS MORAN, and YOLEISSY

MANSFARROL,

*individually and on behalf of themselves and
others similarly situated,*

        *Plaintiffs,*

v.

AGENT WALL SYSTEMS, INC., and B&A

CONSTRUCTION SERVICES, INC.,

       *Defendants.*

Civil Action No.:  3:20-cv-00823

<u>**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION FOR FINAL
SETTLEMENT APPROVAL**</u>

The Parties to this action, Plaintiffs Douglas Moran and Yoleissy Mansfarrol ("Named

Plaintiffs"), alongside Agent Wall Systems, Inc. ("Agent Wall") and B&A Constriction Services,

Inc. ("B&A," and collectively "Defendants"), by and through their undersigned counsel, and

pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and Local Rule 7 of

the Rules of the Eastern District of Virginia, submit this memorandum of law in support of their

joint motion for final settlement approval.[1]

---

[1] If the Court believes that a hearing on this Motion is appropriate, the Parties jointly request that it be conducted by telephone or video conference, if the Court deems that appropriate.  This is principally because of counsel's concerns about travel during the ongoing COVID pandemic. Avoiding the need to travel would also reduce the expenses arising from this litigation.

## I.    INTRODUCTION

The Parties have moved the Court for approval of their FLSA Settlement.  The Parties reached this Settlement with the assistance of the Honorable Waugh Crigler ("Judge Crigler").  Ex. 3, Declaration of Matthew Kaplan ("Kaplan Decl.") ¶ 5.  The Parties' Settlement was informed by the voluntary exchange of information, in particular, the time and pay records of all Settling Plaintiffs, the creation of damage calculation models using such data, and a full-day mediation session.  The settlement for a gross amount of $430,000 resolves disputed claims that Defendants failed to pay construction workers overtime under the FLSA, failed to provide paystubs in violation of the Virginia Wage Payment Law, Virginia Code § 40.1-29, and improperly classified employees as independent contractors in violation of the Virginia Code § 40.1-28.7:7.

Accordingly, Named Plaintiffs, on behalf of themselves and other similarly situated Settling Plaintiffs, who are listed as signatories to the Settlement Agreement, file this memorandum of law in support of the Consent Motion for Settlement Approval ("Motion").  The Motion requests that the Court find the settlement terms fair and reasonable and award $296,077.38 to the Settling Plaintiffs and $133,922.62 to Plaintiffs' counsel as reasonable attorneys' fees and costs.  Over 95% of the 64 persons eligible to participate in this settlement have opted to do so.  The three individuals who have opted not to participate are not releasing any claims and will not otherwise have their rights adversely affected by the settlement.

## II.    BACKGROUND

Named Plaintiffs and Settling Plaintiffs performed construction work for Defendants at a number of projects throughout the Commonwealth of Virginia.  ECF No. 1, Collective and Class Action Complaint ("Complaint") at ¶¶ 12-14.  Defendant B&A served as a subcontractor to

Defendant Agent on these projects. *Id.* ¶ 15. Plaintiffs allege that they were jointly employed by Defendants. *Id.* ¶¶14, 22-26. Defendants classified Plaintiffs as independent contractors; however, Plaintiffs allege that they should have been classified as employees. *Id.* ¶¶ 16-19. Plaintiffs further allege that they frequently worked more than forty hours per week, but were not compensated at the time and a half overtime rate for their overtime work. *Id.* ¶ 19.

Shortly after this case was filed, counsel for Plaintiffs and Defendants began a discussion about possible resolution. Kaplan Decl. ¶ 4. The Parties requested additional time for Defendants to respond to the Complaint for the purpose of negotiating a settlement and began a discussion around exchanging information that would allow them to have a productive private mediation. ECF No. 12. Ultimately, Defendants produced over 3,750 pages of "hard copy" documents (mainly weekly invoices) and sizeable electronic databases. Because the electronic databases produced were incomplete, Plaintiffs' counsel's paralegals needed to perform substantial data entry so that all relevant data was available in electronic form. Kaplan Decl. ¶¶ 4-5. Once all this data was available, Plaintiffs created a detailed damages model that allowed them to calculate their damages. *Id.* On June 8, 2021, the Parties had an all-day mediation with Judge Crigler and successfully negotiated the terms of settlement. ECF No. 16 ¶ 5. The Settlement provided for damages for all individuals who worked for Defendants and had unpaid overtime according to the best available data of time worked. The Settlement Agreement is only binding on those individuals who sign the settlement. Plaintiffs' counsel and their staff communicated with each of the sixty-four (64) individuals who were eligible to participate in the settlement, and each individual made the choice whether to sign the Settlement Agreement. Kaplan Decl. ¶ 6. Ultimately, sixty-one (61) of the sixty-four (64) individuals decided to participate in the settlement (the "Settling Plaintiffs"). *Id.*

3

### III.    TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement contains a gross settlement amount of $430,000, which includes $296,077.38 to be paid to the 61 Settling Plaintiffs, for their unpaid overtime and liquidated damages, and $133,922.62 in attorneys' fees, costs, and expenses.  Settlement Agreement ¶ 5.  In exchange for this monetary compensation, Settling Plaintiffs release all claims, known or unknown, against Defendants, that relate in any manner to the claims raised in this Lawsuit.  Settlement Agreement ¶ 7.  This release was signed by all Settling Plaintiffs.

Pursuant to the Settlement Agreement, Plaintiffs' Counsel has prepared a Schedule of Payments (attached as Exhibit 2) which sets out the individual settlement amount for each Settling Plaintiff, which was calculated based on the amount of overtime hours owed to each Settling Plaintiff according to Defendants' records.  The amounts initially allocated to the three persons eligible to participate in the settlement who opted not to do so (a total of about $600) have been redistributed to those participating in the settlement.  Each settling plaintiff will receive approximately 127% of the amount that Plaintiffs calculate that they were underpaid.

### IV.    THE SETTLEMENT SHOULD BE APPROVED BY THE COURT

#### A.  Standard for Settlement Approval Under the FLSA

Courts in this circuit generally hold that FLSA settlements should be approved to ensure they are fair and reasonable by either the Department of Labor or the Court.  *Whiting v. Johns Hopkins Hosp.*, 426 Fed. App. 312, 315-16 (4th Cir. 2011) (comparing the requirements for FLSA settlements to other statutes).  To determine whether a settlement is fair, the court considers:

> (1) The extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the

4

> experience of class counsel and class members after receiving the notice of settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of settlement in relation to the potential recovery

*Funkhouser v. City of Portsmouth*, Civil Action No. 2:13cv520, 2015 U.S. Dist. LEXIS 191664 at *5 (E.D. Va. May 14, 2015) (citations omitted). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136 at *27 (E.D. Va. June 23, 2009) (internal citations and quotations omitted); *see also Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 U.S. Dist. LEXIS 119873 at *9 (E.D.N.C. July 7, 2020) ("There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation.") (citations omitted).

"A proposed [FLSA] settlement should be approved if it reflects a reasonable compromise over issues actually in dispute." *Galvez v. Americlean Servs. Corp.*, 1:11cv1351(JCC/TCG), 2012 U.S. Dist. LEXIS 68001 at *7 (E.D. Va. May 15, 2012). The court's role at a settlement is "a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate." *Lomascolo*, 2009 U.S. Dist. LEXIS 89136 at *28 (citations omitted).

As described in detail below, the Parties' Settlement Agreement is fair and reasonable, and should be approved.

**B. The Settlement Is Fair and Reasonable**

  i.     The Extent of Discovery Conducted

Although it occurred by agreement of the Parties rather than during formal

discovery, the Parties exchanged a significant amount of information that permitted them to evaluate the claims and risks of litigation. Importantly, Defendants produced their records of hours worked for Settling Plaintiffs and the hourly pay rates for those individuals, which allowed Plaintiffs to calculate the damages that would be owed to each individual if they had been compensated at the proper overtime rate. Kaplan Decl. ¶ 4-5. Plaintiffs provided this damages calculation to Defendants and the Parties also drafted detailed mediation statements in advance of their mediation with Judge Crigler. *Id.* This exchange of information allowed the Parties to evaluate the strengths and weaknesses of each side's position in order to arrive at a fair and reasonable settlement.

      ii.      <u>The Stage of the Proceedings</u>

This case settled early in the proceedings as, early on, all Parties agreed that it was in the interest of all Parties to review the relevant records and engage in settlement discussions prior to a significant amount of fees being expended in formal discovery and motion practice. Kaplan Decl. ¶ 4. Nonetheless, the Parties engaged in a substantial amount of work obtaining and reviewing the relevant records, negotiating the appropriate scope of any settlement, inputting extensive amounts of data, creating a damages model, mediating this matter with Judge Crigler, and communicating with the individual Plaintiffs throughout the process. *Id.* ¶¶ 4-5. Additionally, Plaintiffs' counsel, Matthew Kaplan of The Kaplan Law Firm and Rachel Nadas and Matthew Handley of Handley Farah & Anderson PLLC, are highly experienced in complex FLSA cases and believe that settlement at this stage is in the best interest of the Settling Plaintiffs. *Id.*

      iii.     <u>The Absence of Fraud or Collusion in the Settlement</u>

Absent evidence to the contrary, there is a presumption that no fraud or

6

collusion occurred when reaching a settlement. *Hatzey v. Divurgent, LLC*, Case No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007 at *9 (E.D. Va. Oct. 9, 2018) (citation omitted) (report and recommendations adopted in *Hatzey v. Divurgent*, 2018 U.S. Dist. LEXIS 186172). Additionally, the Parties reached their settlement agreement at mediation with the assistance and supervision of Judge Crigler. Kaplan Decl. ¶ 5. All individuals who were eligible to join the settlement were given the option to participate or not participate, and a few of the individuals who were eligible have chosen not to join, further demonstrating a lack of collusion between the Parties. *Id.* ¶ 6. There is no suggestion that any fraud or collusion occurred in reaching the settlement.

iv.     The Experience of Counsel who Represented Plaintiffs

Plaintiffs' counsel has significant experience litigating complex collective and class action wage and hour cases. Matthew Kaplan has over fifteen years of experience litigating class and collective actions including wage and hour violations. Kaplan Decl. ¶ 1. Matthew Handley has over seventeen years of experience litigating class and collective actions including wage and hour violations. *Id.* ¶ 2. Rachel Nadas has approximately four years of experience litigating class and collective actions including wage and hour violations. *Id.* ¶ 3.

Plaintiffs' counsel has used their experience and skill to conserve the Court's and Parties' resources by engaging in early settlement discussions, and used their knowledge of the FLSA to assess the strengths and weaknesses of the claims and defenses in this case, as well as calculate damages on behalf of all Settling Plaintiffs. The extensive experience of Plaintiffs' counsel counsels in favor of settlement approval.

v.     The Opinions of Collective Action Members and Counsel

Plaintiffs' counsel believes that the settlement is fair and reasonable, especially in light of the reality that it appears that Defendants could have raised a number of viable defenses as to

liability or damages.  Kaplan Decl. ¶ 1.  In all cases "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).  Defendants are represented by skilled and experienced counsel who would have disputed that Plaintiffs were improperly classified as contractors and entitled to overtime compensation.  Whether Settling Plaintiffs were contractors or employees entitled to overtime compensation would be a fact intensive analysis and there can be no assurance that Plaintiffs would have prevailed on this issue.  Additionally, counsel for Defendant Agent Wall Systems would have vigorously litigated whether Settling Plaintiffs were jointly employed by Agent Wall Systems.  Had the Court determined Settling Plaintiffs were solely employed by B&A, Plaintiffs would have likely had a limited ability to recover money, even if it they had obtained judgment in their favor, given B&A's apparently limited resources.  Kaplan Decl. ¶ 7.  Another concern was that Defendants might have challenged Plaintiffs' damages methodology, arguing that actual damages were less than those asserted by Plaintiffs. Accordingly, the Settlement is in Plaintiffs' interest:  it provides a significant recovery while eliminating the risk of continued litigation, and the extensive delay that would result in prosecuting this action through trial and, possibly, appeals.

Significantly, the vast majority of individuals who were eligible to join the settlement (61 out of 64) did so.  Kaplan Decl. ¶ 6.  Those individuals who have chosen not to join the settlement are not bound in any way and are free to bring their own claims if want.  *Id.* Accordingly, all individuals who are bound by the Settlement have freely and voluntarily chosen to participate after consultation with counsel.  *Id.*[2]

---

[2] The universe of persons who completed opt-in forms in this matter is greater than 64 persons. Some of these individuals did not perform work for both of the Defendants in this matter.  Others did work for both Defendants but, under Plaintiffs' damages calculations, were not underpaid

vi.    <u>The Amount of Settlement in Relation to the Potential Recovery</u>

The Settlement amount that is allocated to Settling Plaintiffs equals 1.27 times the amount of underpaid wages that Plaintiffs' counsel calculated based on the timesheets provided by Defendants, which were the best available evidence of damages.  While the potential recovery in this case if litigated to judgment and successful on all claims could have been more, Settling Plaintiffs could have recovered nothing if Plaintiffs were unsuccessful or were successful but could not collect on a judgment.  *See, e.g. Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) ("the existence of strong defenses to the claims presented makes the possibility of low recovery quite reasonable.").  Given the contested issues of joint employment as well as whether Plaintiffs were independent contractors versus employees, a recovery of 127% of actual damages is a successful recovery for all Settling Plaintiffs.

**C.  The Settlement is a Compromise of a *Bona Fide* Dispute**

The Settlement resolves a *bona fide* dispute between the Parties.  Specifically, there is a *bona fide* dispute as to whether Agent Wall Systems was a joint employer and whether the workers were improperly classified as contractors who should have been paid overtime compensation.  Had this case been litigated, the Parties would have conducted extensive discovery and motion practice addressing joint employment and the appropriate classification of the Settling Plaintiffs.  Defendants would surely have also disputed whether this case was appropriate for a collective action had Plaintiffs filed a motion for certification.  There would also likely have been litigation over the property methodology to calculate Plaintiffs' damages.

---

and, consequently, would not be entitled to any recovery.  These individuals were timely notified that they would not be part of this settlement and are entitled to pursue any claims they believe that they may have.

These factors support a finding that the Settlement is a fair and reasonable resolution of a *bona fide* dispute.

**D. Plaintiffs' Request for Attorneys' Fees and Costs are Reasonable**

The FLSA mandates an award of reasonable attorneys' fees and costs to a plaintiff. 29 U.S.C. § 216(b). As agreed to in the Settlement Agreement, Plaintiffs' counsel requests $133,922.62 in attorneys' fees, costs, and expenses, which is approximately 31.1% of the Gross Settlement Amount. Plaintiffs' counsel came to this amount by first ensuring that Settling Plaintiffs would receive a minimum of 1.25 times their unpaid wages in damages.

A percentage of the total recovery is the favored method of calculating attorneys' fees in common fund cases. *Hatzey*, 2018 U.S. Dist. LEXIS 187007 at *14 (FLSA case utilizing percentage of total recovery method); *Savani v. URS Prof. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorneys' fees"); *Strang v. JHM Mortgage Sec. Ltd. P'ship.*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases").

Under this approach, courts in this District consider: "(1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy." *Sanchez v. Lasership, Inc.*, No. 1:12-cv-246(GBL-TRJ), 2014 U.S. Dist. LEXIS 199228 at *1 (E.D. Va. Aug. 8, 2014) (citation omitted). All of these factors support the request for an award of approximately 31.1% of the Gross Settlement Amount for attorneys' fees, costs, and expenses.

Considering the risks of litigation, Plaintiffs' counsel obtained excellent results for the Settling Plaintiffs. First, all Settling Plaintiffs will receive approximately 1.27x the amount of the amount that they were underpaid, which is a beneficial result, especially balanced against the risk that Settling Plaintiffs could recover nothing if their claims were unsuccessful. Additionally, this case was resolved efficiently, and money will be paid to Settling Plaintiffs shortly after court approval rather than years from now if the case was fully litigated. Second, Plaintiffs' counsel are highly experienced in litigating wage and hour collective and class action cases and worked to resolve this matter efficiency. Kaplan Decl. ¶¶ 1-4. Third, the case involved extensive data that required experienced counsel to evaluate, process, and analyze. *Id.* ¶¶ 4-6. Fourth, Plaintiffs' counsel accepted this case on a contingency basis and advanced all litigation costs. *Id.* ¶ 8. Plaintiffs' counsel risked receiving no compensation or reimbursement of costs. *Id.* Fifth, an award of at least a one-third percentage of the common fund (which is slightly higher than what Plaintiffs' counsel is requesting) is typical in similar FLSA cases. *See, e.g. Hatzey*, 2018 U.S. Dist. LEXIS 187007 at *16-17 (FLSA case awarding one-third of common fund as attorneys' fees and costs); *Devine v. City of Hampton, Virginia*, 2015 U.S. Dist. LEXIS 177155 at *42 , No. 4:14-cv-81, (E.D. Va. Dec. 1, 2015) (awarding fees and costs that amount to 33.98% of an FLSA settlement); *Sanchez*, 2014 U.S. Dist. LEXIS 199228 at *4 (awarding one-third of common fund as attorneys' fees and costs). Sixth, Settling Plaintiffs all had the choice of whether to join the settlement or not, and for those who chose not to sign the Settlement Agreement, they are not bound by the agreement and retain their potential claims against Defendants. Seventh, public policy supports a common fund award in a FLSA case, as the adequate compensation of attorneys who protect workers FLSA rights by taking on this type of litigation promotes the remedial motivations of the FLSA. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the

objective of the FLSA to ensure all employees receive "a fair day's pay for a fair day's work."). Fee shifting statutes "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.  But for the separate provision of legal fees, many violations . . . would continue unabated and uncorrected." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120 at *9 (S.D.N.Y. Jan 7, 2010).

While assessing the fairness of attorney's fees in a FLSA settlement "is not identical to determining their reasonableness using the familiar lodestar method," *Devine*, 2015 U.S. Dist. LEXIS at *41, courts often evaluate the reasonableness of a fee award by comparing the requested amount to counsel's lodestar.  *Grissom v. Mills Corp.*, 409 F.3d 313, 320-21 (4th Cir. 2008); *Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005).  Importantly, in appropriate circumstances, an attorneys' fee award can be fair and reasonable even if it is more than the attorney's lodestar. *See, e.g.* 2018 U.S. Dist. LEXIS 187007 at *16-17 (finding a one-third of the common fund in a FLSA case fair reasonable even though it resulted in 6.4 times the actual lodestar).

Here, Plaintiffs' counsel has requested $133,922.62 is supported by their Lodestar, which is $148,196.57, higher than the requested amount.  Kaplan Decl. ¶ 8.  Plaintiffs' counsel have expended over 541 hours of attorney and paralegal time litigating this action.  *Id.*  Their lodestar is $148,196.57 plus they have an additional $2,176.01 in costs and expenses.  *Id.*  Counsel's lodestar exceeds the amount of attorneys' fees, costs and expenses they are seeking to recover as part of the Settlement.  *Id.*  Additionally, Plaintiffs' counsel's lodestar does not include the time counsel will spend preparing for and attending the Settlement Approval Hearing, and if approved, distributing settlement checks to and answering any additional questions from all Settling Plaintiffs.

Additionally, Defendants do not oppose Plaintiffs' counsel's application for $133,922.62 in attorneys' fees, costs, and expenses. Settlement Agreement ¶ 5. Accordingly, the Court should find the request for $133,922.62 in fees, costs, and expenses as reasonable and fair and award this amount.

## V.    TERMINATION OF THIS LAWSUIT

The proposed order and final judgment which accompanies this Motion provides that the Settlement is approved and that this case shall be closed (with the Court retaining jurisdiction for enforcement of the settlement agreement, if necessary). It further provides that the claims of all persons who have signed the Settlement are dismissed with prejudice, while the rights of persons who have not signed the settlement are not affected in any way by this lawsuit or the resulting settlement.[3]

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs request the Parties' Joint Motion for Settlement be granted. A Proposed Order and Final Judgment is attached.

---

[3] The proposed order and final judgment also reflects the reallocation, in accordance with the terms of the Settlement, of the funds initially designated for the three persons who have opted not to participate in the Settlement. Two of these individuals have affirmatively indicated that they do not want to participate in the settlement. The third individual, Ricardo Martinez-Rivera, has declined to sign the settlement, despite being told by Plaintiffs' counsel's paralegal by telephone text and letter that he must do so to participate in the settlement and having been provided ample time to do so. Kaplan Decl. ¶ 6. Like all non-signers, these individuals are not releasing any claims.

Dated:  September 30, 3021                          Respectfully Submitted,



                                                   **DOUGLAS MORAN and YOLEISSY**
                                                   **MANSFARROL, individually and on**
                                                   **behalf of themselves and others**
                                                   **similarly situated**

                                                   By Counsel

                                                   _____/s/_____
                                                   Rachel Nadas (VSB No. 89440)
                                                   Matthew Handley, admitted *pro hac vice*
                                                   Handley Farah & Anderson PLLC
                                                   200 Massachusetts Avenue NW, 7th Floor
                                                   Washington, D.C. 20001
                                                   Tel. 202.899.2991
                                                   rnadas@hfajustice.com
                                                   mhandley@hfajustice.com
                                                   *Counsel for Plaintiffs*

                                                   _____/s/_____
                                                   Matthew B. Kaplan (VSB No. 51027)
                                                   The Kaplan Law Firm
                                                   1100 N. Glebe Road, Suite 1010
                                                   Arlington, VA 22201
                                                   Tel. 703.665.9529
                                                   mbkaplan@thekaplanlawfirm.com
                                                   *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2021, I filed the foregoing document and all of its

attachments using the Court's CM/ECF system, which will serve it electronically on all counsel

of record.

/s/ Rachel Nadas_____
Rachel Nadas